# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | * | |
| **UNITED STATES** | * | |
| | * | |
| **v.** | * | **Case No. 22-CR-338-DLF** |
| | * | |
| **TRACI ISAACS** | * | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

The Defendant, Traci Isaacs ("Ms. Isaacs"), by and through her attorneys, Michael E. Lawlor, Nicholas G. Madiou, and Brennan, McKenna & Lawlor, Chtd., submits this memorandum in support of the arguments to be presented at the time of sentencing.

This memorandum focuses on Ms. Isaacs' personal history and characteristics, her fulsome acceptance of responsibility, the support she enjoys from her family and community, and her extraordinary family circumstances and responsibilities. Ms. Isaacs respectfully asks that this Court consider this information in fashioning a sentence of home confinement as such a sentence is sufficient but not greater than necessary to achieve the goals of sentencing in this case.

## I.    Introduction

On October 12, 2022, the United States charged Ms. Isaacs in an eleven-count criminal indictment with Altering, Destroying, Mutilating, or Concealing a Record, Document, or Other Object in violation of 18 USC §1512(c)(1) and (2) ("Count

Two"); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 USC §1752(a)(1) ("Count Four"); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 USC §1752(a)(2) ("Count Six"); Disorderly Conduct in a Capitol Building in violation of 40 USC §5104(e)(2)(D) ("Count Eight"); and Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 USC §5104(e)(2)(G) ("Count Ten").

On April 21, 2023, Ms. Isaacs appeared before this Honorable Court and accepted responsibility for her conduct. Specifically, she pled guilty to Count Two of the Indictment. (Plea Agreement, ECF No. 33; Statement of Offense, ECF No. 34; Waiver of Trial by Jury, ECF No. 35.) Under the terms of the Plea Agreement, Ms. Isaacs and the Government agreed to an estimated total offense level of 14 and an estimated Criminal History Category of I, which produce an estimated advisory guidelines range of 15 to 21 months of imprisonment. Recent amendments to the United States Sentencing Guidelines, specifically for zero-point offenders such as Ms. Isaacs, call for an additional two-level reduction in offense level resulting in an adjusted guidelines range of 10 to 16 months of imprisonment. Ms. Isaacs reserved the right to seek a sentence below the estimated advisory guidelines range based upon the 18 U.S.C. § 3553(a) factors. (ECF No. 33 ¶ 5.) In this case, a sentence of home confinement is sufficient but not greater than necessary to achieve the goals of sentencing.

Sentencing is currently scheduled for January 12, 2024 at 10:00 a.m.

## II.   Initial Appearance and Release on Personal Recognizance

As reflected in the Presentence Investigation Report ("PSR"), Ms. Isaacs was arrested and appeared before a Magistrate Judge of the United States District Court for the Middle District of Florida on June 15, 2022. PSR, ECF No. 62 at 1. At the conclusion of that hearing, Ms. Isaacs was ordered released on conditions pending further proceedings in this Court. On June 23, 2022, Ms. Isaacs appeared before United States Magistrate Judge Zia M. Faruqui for an initial appearance. At the conclusion of that proceeding, Judge Faruqui ordered Ms. Isaacs released on her own recognizance. (Order Setting Conditions of Release, ECF No. 14.)

For more than 18 months, Ms. Isaacs has successfully complied with all conditions of pretrial release.

## III.   Plea Agreement & Sentencing Guidelines Calculation

In the Plea Agreement, the parties agreed that the base offense level for Count Two is 14 pursuant to U.S.S.G. § 2J1.2. Three levels are added pursuant to U.S.S.G. § 2J1.2(b)(2) because the offense involved substantial interference with the Administration of Justice. The parties further agreed that under U.S.S.G. § 3E1.1, Ms. Isaacs is entitled to a three-level downward adjustment for acceptance of

responsibility. The parties agreed at the time of the plea agreement that the final adjusted offense level in this case is 14.

The calculation of the applicable adjusted offense level contained in the PSR is consistent with the parties' estimation. However, on November 1, 2023, several months after Ms. Isaacs entered her guilty plea in this case, a set of amendments to the advisory guidelines took effect. Under the new U.S.S.G. § 4C1.1(a), Ms. Isaacs is entitled to a two-level decrease in offense level because she is a zero-point offender and certain disqualifying characteristics are absent from the offense conduct. Accordingly, Ms. Isaacs' total offense level should be calculated at a 12, and not a 14 as originally agreed to in her plea agreement.

In the Plea Agreement, the parties estimated that Ms. Isaacs had no prior criminal convictions and is therefore properly placed into Criminal History Category I. (ECF No. 33 at 3.) The PSR also reflects that Ms. Isaacs has no prior juvenile convictions, adult convictions, or even arrests. PSR ¶¶ 47-54.

With a final adjusted offense level of 12 and a Criminal History Category I, the applicable advisory guidelines range in this case is 10-16 months of imprisonment. For the reasons set forth below, a term of home incarceration is a sufficient but not greater than necessary sentence in Ms. Isaac's case.

## IV.    A Reasonable Sentence in this Case

The Supreme Court has said that the cornerstone of federal sentencing is that the sentencing judge "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487 (2011) (*quoting Koon v. United States*, 518 U.S. 81, 113 (1996)). After properly calculating the appropriate advisory guidelines range, this Court must consider all of the factors set forth at 18 U.S.C. § 3553(a) and undertake "an individualized assessment" of the case based on the facts presented.  *United States v. Akhigbe*, 642 F.3d 1078, 1084 (D.C. Cir. 2011) (citing *Gall v. United States,* 552 U.S. 38, 49, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). The overarching goal of federal sentencing is to impose a sentence that is "sufficient but not greater than necessary" to comply with the factors set forth in 18 U.S.C. § 3553(a). *United States v. Anderson*, 545 F.3d 1072, 1077 (D.C. Cir. 2008) (citing 18 U.S.C. § 3553(a)).

In the sentencing context, the United States Court of Appeals for the District of Columbia Circuit gives "due deference" to a district court's fact-specific determinations and application of the advisory guidelines to the facts of each case, "a standard which reflects the recognition that the district courts should be afforded some flexibility in applying the guidelines to the facts before them." *United States v. Olejiya*, 754 F.3d 986, 990 (D.C. Cir. 2014) (citations omitted).

Here, when considering all the relevant factors, a guidelines sentence served on home confinement represents a sufficient punishment for Ms. Isaac's conduct, without being greater than necessary.

<u>The Nature and Circumstances of the Offense</u>

This Court is well aware of the nature and circumstances of the events at the Capitol on January 6, 2021. The Statement of Offense to which Ms. Isaacs agreed sets forth the background and context of those events. (ECF No. 34 ¶¶ 1-7.) On that date, then-51-year-old Traci Isaacs, who had no prior contact with the criminal justice system, traveled from her home in Florida to Washington, D.C. with her husband Luis Hallon, her nephew Williams Isaacs, and her neighbor Leslie Gray to participate in a political rally. Prior to that day, Ms. Isaacs had become a member of the Oath Keepers. Her membership had lapsed, but she renewed her membership in the weeks leading up to January 6, 2021 and volunteered to be present at the speeches planned on that day. Despite her affiliation with the Oath Keepers, Ms. Isaacs' did not come to the District of Columbia with any intention other than participating in a peaceful political rally. She did not engage in any violence whatsoever. And she was not a part of any nefarious plan associated with the Oath Keepers at large. She communicated on a Signal chat with other members of the Oath Keepers as they traveled to the District of Columbia.

On the morning of January 6, 2021, Ms. Isaacs "proceeded to the Capitol where [she and her husband] joined in the protest." ECF No. 34, at 4. Ms. Isaacs ultimately entered the Capitol at approximately 3:02 p.m. and remained inside the building for 14 minutes. She and her husband took photographs and videos on their cellphones and walked through the Rotunda. Again, while Ms. Isaacs was a part of the riot that ultimately overcame law enforcement's efforts to control the crowd, she did not engage in violence or have any physical contact with law enforcement whatsoever.

Regretfully, following January 6, 2021, Ms. Isaacs succumbed to panic over her involvement in the events at the Capitol. From January 7, 2021 through January 25, 2021, Ms. Isaacs deleted and attempted to delete from her cell phone text messages, photos, and videos relating to January 6, 2021. She told other participants in the Oath Keepers chat to delete media related to January 6, 2021 from their phones. Ms. Isaacs also deleted her Oath Keepers "contacts" from her cell phone.

Ms. Isaacs genuinely acknowledges that her conduct on January 6, 2021 and her efforts to delete materials related to that conduct were wrong and unacceptable. For that reason, she truthfully admitted to her conduct before this Court and pleaded guilty to a federal felony offense. To be sure, others in the crowd assaulted police officers who were merely trying to establish order, but Ms. Isaacs did not engage in such conduct. Nor did Ms. Isaacs engage in the destruction of property. Furthermore,

Ms. Isaacs did not come to the scene of the Capitol armed with any implements to be used as weapons. Her conduct was serious, but in a life otherwise highlighted by dedication to her family and others, Ms. Isaacs' conduct is not a reflection of who she is as a person, and she will absolutely not engage in any similar conduct in the future.

<p align="center">Ms. Isaacs' Personal History & Characteristics</p>

In 18 U.S.C. § 3553(a)(1), Congress has directed that district courts consider a criminal defendant's "history and characteristics" to determine whether a sentence is sufficient, but not greater than necessary to promote the purposes of sentencing. *United States v. Holmes*, No. CR 02-24, 2021 WL 1518336, at \*9 (D.D.C. Apr. 16, 2021). The United States Court of Appeals for the District of Columbia Circuit has held that a "district court *must* take into account all relevant facts related to a defendant's 'history and characteristics.'" *United States v. Delaney*, 651 F.3d 15, 16 (D.C. Cir. 2011) (emphasis added) (citing 18 U.S.C. § 3553(a)(1)). When considered in the context of her life of devotion to family and hard work, Ms. Isaacs' history and characteristics weigh heavily in favor of a more lenient sentence.

Traci Isaacs was born on October 27, 1969 in Onondaga County, New York to Laurie Ann Fulton and Arthur Alan Isaacs. Ms. Isaacs' father passed away in 2015. As will be discussed more fully below, Ms. Isaacs' mother passed away during

the pendency of this case in October 2023. Ms. Isaac's mother was a retired firefighter and paramedic.

Ms. Isaacs shared an incredibly close relationship with her brothers Nathan Tuttle and Andrew Isaacs. Ms. Isaacs' parents were married at the time of her birth but divorced when she was 5 years old. Ms. Isaacs grew up in the care of her mother, but enjoyed a loving relationship with her father as well. She moved from New York to Kissimmee Florida when she was 10 years old.

Ms. Isaacs graduated from Osceola High School in Kissimmee, Florida in 1987, and she attended Valencia College in Orlando, Florida from 1987 to 1988 where she earned her Associates in Arts in English. Ms. Isaacs completed the Emergency Medical Technician Program at Valencia College in 1987 and went on to attend Rollins College in Winter Park, Florida from 1995 to 1997. She earned her Bachelor of Arts degree in English on May 31, 1997.

Ms. Isaacs received formal training from the Central Florida Fire Academy of Orlando in 1987 where she successfully completed 280 hours of Basic Required Recruit Training. In 1989, Ms. Isaacs completed 96 hours of Engineers Training. She became a certified paramedic in 1992, and obtained professional licenses in Florida as an emergency medical technician and paramedic.

Ms. Isaacs has a strong work history spanning almost her entire adult life. She has worked both as an investigative news reporter in California and a firefighter and

paramedic in Florida. Following her daughter's birth in 2005, Ms. Isaacs became a devoted stay at home mom, attending to her daughter's many physical and mental health needs. PSR, at ¶ 73. Since 2017, Ms. Isaacs has worked as a dispatcher for Dellwood Towing in Kissimmee, Florida where she continues to work full time from home.

Ms. Isaacs has enjoyed a loving relationship with her husband, Luis Hallon since 2004. The two were married on January 27, 2021. Ms. Isaacs and Mr. Hallon have two children together. Mr. Hallon is currently serving a 24-month term of supervised release in a related case. ██████████████████████████████ ████████ The two reside with their two children in St. Cloud, Florida.

██████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████

Beginning in 2019, Ms. Isaacs and her family experienced a series of incredibly difficult tribulations. In that year, Ms. Isaac' brother, Andrew Isaacs, tragically died at the age of 46. Mr. Isaacs was a firefighter and has been described as the backbone of Ms. Isaacs' family. In Ms. Isaacs' letter to the Court, she describes how difficult her brother's death was for her and how this tragedy was made all the more difficult by her decisions on January 6, 2021 and thereafter. In her letter she writes:

> If I could, I would like to tell the Court a bit about what our family has gone through in recent years. In January, 2019, my beloved brother was found dead in his home. My brother was the heart and soul our family. He was the engine. He always made the right choices, he was the planner, the saver, the organizer, the thinker, the man you went to for honest advice. We adored him. His home was four families' center of gravity. We celebrated every milestone and event at that bucolic little lake house. He purchased that home with his first wife, his sons' mother, and raised his boys there. He nearly lost the home during his divorce but I fought alongside him to help him keep it. I look back on that now with despair because he died in the same house.
>
> *      *      *
>
> To this day, his cause of death is unsettled. He had three teenage sons when he died, two of whom have autism. On the day of his funeral, his wife kicked his sons out of the family home. They left the only home they ever knew dragging garbage bags full of their belongings while still in their funeral clothing. When they needed each other the most, they were scattered and no longer living together.
>
> *      *      *
>
> I was deeply depressed by this intense loss and tragic experience. The family had not had a chance to recover from this loss when January 6, 2021 took place. I brought my brother's eldest son, William, with us to

Washington D.C. that date. The shame and regret I feel is so deep and painful. I love William and his brothers so much. I love them as if they were my own sons.

I wanted nothing more from that trip than to take a break from our difficult and sad life and get outside ourselves for once. We have gone from one, never-ending nightmare into another. And I feel responsible. We have been racked by waves of death, including my father, then my stepmother a few months after, followed by my brother.

While at times, I feel like our family is in a freefall, I refuse to believe that we cannot overcome the tragedy. I am responsible now for putting William back on his feet, and my other nephews, and for helping my own two children recover from all this, a daunting task indeed. As for the pain and added trauma from the aftermath of January 6, 2021, I have only myself to blame.

Exhibit A.

In addition to the significant loss of her brother in 2019, Ms. Isaacs also endured the loss of her beloved mother during the pendency of this case. In 2022, Ms. Isaacs' mother's health began declining rapidly due to cancer and dementia. In 2022, Ms. Isaacs' took on the role of caretaker for her mother, tending to her health needs day and night. Eventually, her mother began receiving hospice care services in April 2023. In October 2023, Ms. Isaacs' mother passed away surrounded by her loved ones, including Ms. Isaacs.

Ms. Isaacs comes before the Court with no history of physical or mental health ailments or substance abuse. As reflected in the PSR, Ms. Isaacs has no prior criminal history of any kind. For more than 18 months, Ms. Isaacs has fully complied with her court-ordered conditions of release.

When fashioning an appropriate sentence in this case, Ms. Isaacs respectfully requests that this Court consider her history and characteristics, including her close family ties and caretaking responsibilities, lifelong history of stable employment, the hardships she has endured, and her success on pretrial release.

### U.S.S.G. § 5H1.6: Ms. Isaacs' Family Ties and Caretaking Responsibilities Support a Variant Sentence in this Case

Ms. Isaacs respectfully asks this Court consider under 18 U.S.C. §3553(a) her unique family ties and responsibilities pursuant to U.S.S.G. § 5H1.6 when determining an appropriate sentence in this case. ███████████████████

████████████████████████████████████████

███████████████████████████.

The United States Sentencing Guidelines provide that the Court may consider "family ties and responsibilities" in determining whether a departure may be warranted. U.S.S.G. § 5H1.6. Specifically, this Court can consider the unique family circumstances presented in this case, and the harm that would be caused by incarcerating Ms. Isaacs ███████████████████████████████████

████████████████████████ Consistent with the terms of the Plea Agreement, Mr. Isaacs submits that this Court can and should consider her family ties and responsibilities in imposing a variant sentence. *E.g.*, *United States v. Johnson*, No. 23-1370, 2023 U.S. App. LEXIS 30405, at *2 (6th Cir. Nov. 14, 2023)

("[T]he same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance.")

Under the guidelines, a departure under this policy statement based on the loss of caretaking, requires the presence of the following circumstances:

(i) The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.

(ii) The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.

(iii) The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.

(iv) The departure effectively will address the loss of caretaking or financial support.

U.S.S.G. § 5H1.6 (B) Application Note 1 (B ███████████████████████████

██████████████████████████ satisfies the requirements of § 5H1.6 (B) and weighs in favor of a variant sentence of home confinement under 18 U.S.C. §3553(a).





[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

While Ms. Isaacs has more confidence in her son's ability to adapt to her

potential incarceration, his age and recent diagnoses have placed even more pressure on her as the mother and primary caretaker in the family. Simply put, Ms. Isaacs' absence through incarceration, and her children's loss of her caretaking "substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant." U.S.S.G. § 5H1.6 (B) Application Note 1 (B) (ii). For these additional reasons Ms. Isaacs respectfully requests that this Court impose a variant sentence of home confinement.

<u>A Sentence of Home Confinement Will Justly Punish Ms. Isaacs and Promote Respect for the Law</u>

Unlike many January 6 defendants with no prior criminal history and who did not engage in assaultive conduct, Ms. Isaacs was not permitted to resolve this case by way of a guilty plea to a misdemeanor offense. Her felonious conduct occurred in the days following January 6, 2021, when she deleted and attempted to delete texts, and multimedia related to the events at the Capitol. Despite the seriousness of this conduct, for Ms. Isaacs, who comes before the Court at 54 years of age with no prior criminal record, the fact of a federal felony conviction is in and of itself a serious punishment.

Ms. Isaacs understands that it is her unlawful conduct that has resulted in this felony conviction. She has no one to blame but herself. Nevertheless, Ms. Isaacs and her family have suffered in the wake of her arrest. Particularly in consideration of

her caretaking responsibilities at home and her early acceptance of responsibility, the requested sentence of home confinement will promote the goals of deterrence and the protection of the community. In terms of specific deterrence, this Court can be sure that Ms. Isaacs, who has no prior criminal record, will never again act in a manner that would subject herself to criminal prosecution or her family to the collateral consequences they have experienced.

The requested sentence also sends a message to the national community that those who participated in criminal acts on January 6 or who would engage in such acts in the future will be prosecuted and punished, regardless of whether they had previously led law-abiding lives. In terms of the need to protect the public, Ms. Isaacs has no history of engaging in violent or otherwise unlawful conduct. She has remained in the community on conditions of release for more than 18 months. A period of incarceration is not required to protect the public.

If Ms. Isaacs were to be sentenced to a term of imprisonment, her children would suffer. That potential harm "substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant." U.S.S.G. § 5H1.6 (B) Application Note 1 (B) (ii). While Ms. Isaacs' husband is currently serving a sentence of probation on his related case, their children rely uniquely on their mother to provide for them and their serious mental health needs. By accepting responsibility before this Court, Ms. Isaacs has demonstrated remorse for her

conduct. She has abided by all court-ordered conditions of release for more 18 months. In this case, a sentence of home confinement, as opposed to imprisonment, is the appropriate sentence. Ms. Isaacs respectfully requests the Court consider these factors in imposing an appropriate sentence in this case.

<div align="center">Family and Community Support</div>

Several of Ms. Isaacs' loved ones have written to the Court on her behalf. Ms. Isaacs is grateful to have such a strong support network. Those letters are attached to this Memorandum as Exhibit D. The letters provide insight into Ms. Isaacs' character from those who know her best. While no summary could adequately convey the sentiments expressed by Ms. Isaacs' family and friends, the undersigned counsel wish to draw attention to one of the letters submitted on Ms. Isaacs' behalf, as perhaps it highlights best who Ms. Isaacs is and the remorse she feels for her conduct in this case.

Wendy Wehrendt met Ms. Isaacs last year when she was assigned as Ms. Isaacs' mother's hospice nurse. In her letter, Ms. Wehrendt talks about Ms. Isaacs' compassion, her remorse, and her unique responsibilities. "Traci is kind and loving, always thinking of others. She is the center of her family, always putting them above herself. She took care of her mother with the utmost love and compassion, while being a mother of two special needs children." Exhibit D. This letter, and the other letters included within Exhibit D leave the undeniable impression that Ms. Isaacs is

<div align="center">19</div>

a beloved member of her family and community. She is a woman who is dedicated to her family and children. She is a hard worker who does not hesitate to help members of her community who are in need. Ms. Isaacs respectfully requests that this Court consider the words of those who know her best in fashioning an appropriate sentence in this case.

<div align="center">

**Ms. Isaacs Has Fully Accepted Responsibility**

</div>

Ms. Isaacs has accepted full responsibility for her conduct on January 6, 2021 by pleading guilty before this Court. Ms. Isaacs' conduct on January 6, 2021 and the days thereafter represents the worst series of choices she has made in her 54 years of life. Ms. Isaacs looks forward to addressing the Court at the time of sentencing to express her sincere remorse for her conduct. However, in advance of the hearing, Ms. Isaacs has taken the time to write this Honorable Court and express her remorse and genuine self-reflection as she awaits sentencing. *See* Exhibit A.

In her letter, Ms. Isaacs accepts the fact that she was the one who planned her family's trip to Washington D.C. on January 6, 2021. She writes, "I am responsible for the outcomes and don't think I will ever forgive myself." Exhibit A. As for bringing her nephew William along with her, Ms. Isaacs writes that she feels immense guilt. "I didn't realize I was putting him in harm's way. I actually had good intensions of getting him involved. The shame and regret I feel is so deep and

painful. I love William and his brothers so much. I love them as if they were my own sons." Exhibit A.

Unfortunately, Ms. Isaacs' conduct was not limited to her actions on January 6, 2021. Ms. Isaacs regretfully deleted numerous text messages, photos and social media posts, and directed others to do the same in the days after January 6. While there is absolutely no excuse for this conduct, Ms. Isaacs also addresses this in her letter to the Court.

> On the drive back, media stories flooded the Internet and a friend told me that someone had reported us being there to the FBI. I panicked. I was fearful of what the consequences of my actions would be. I deleted evidence from my phone with vain hope that this would blow over. As the days progressed, and more stories kept appearing, I was in an all-out panic attack. I could not imagine our family suffering any more tragedy than we had just gone through. And I knew that I had made a terrible decision with my conduct. Decisions I will always regret.

Exhibit A. Ms. Isaacs' has spent the years following January 6, 2021 doing what she has done for the entirety of her life:  working hard and contributing to her community as a law-abiding citizen. Her decisions on January 6, 2021 and the days thereafter are not a true reflection of who she is as a person or the life she will lead in the future. She is committed to living a law-abiding life and being a pillar of support for her family and community, and will continue to do so.

## V.   <u>Conclusion</u>

In light of the factors discussed above, Ms. Isaacs respectfully requests that this Court exercise leniency in its ultimate resolution of this matter and consider her personal history and characteristics, including her extraordinary family circumstances and responsibilities; her acceptance of responsibility and remorse, and; and the support she enjoys from his loved ones. In Ms. Isaacs' case, a sentence consisting of a term of home incarceration is sufficient, but not greater than necessary to achieve the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

s/_____
Michael E. Lawlor
Nicholas G. Madiou
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane
Suite 700
Greenbelt, Maryland  20770
301.474.0044

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 8, 2024, a copy of the foregoing was electronically filed under seal, with a copy sent to counsel for the United States.

s/_____
Michael E. Lawlor

22